Judge Carr
delivered his opinion.
Theyirsi question in this case will be, as to the actual state, the civil condition of Mary Shaw, after the execution of the deed by Fitzgerald. Did that deed emancipate her ? If so, then secondly, what was the civil condition of her children born after her emancipation ?
In 1723 it was enacted, that no person should emancipate a slave but for meritorious services, and by permission of the Governor and Council. This law continued in force till 1782, when an Act passed entitled, “ An Act to authorise the manumission of slaves;” by which it was enacted that “any person, by will or other instrument in writing under his hand and seal, attested and proved in the County Court by two witnesses, or acknowledged, &tc. may emancipate and set free his slaves, who shall thereupon be entirely and fully discharged from the performance of any contract, entered into during servitude, and enjoy as full freedom as if they had been particularly named and freed by this Act”
*598 In 1788, six years after the passage of this Act, John Fitzgerald executed the deed in question. It runs thus: “ To all persons whom it may concern. Know ye, that I, John Fitzgerald, do by these presents, by virtue and authority of a certain Act of the General Assembly of Virginia, entitled ‘ An Act to authorise the manumission of slaves,’ liberate, emancipate, and relinquish all claim, right, title and interest, to a certain woman slave named Mary Shaio, and now living in the town of Petersburg, reserving to myself, my heirs, &c., nevertheless, an absolute right and claim to all such child or children, which the said Mary Shaw may hereafter bring, or may have born of her body, &e.” This deed was executed, attested by two witnesses, and recorded in Court, in exact conformity with the directions of the Act; and from the reference in the deed to the Act by its title literally recited, it is very probable that the law was before the draftsman, when he drew the deed. The deed says, u by authority of the Act, I do liberate, emancipate and relinquish all claim, right, title and interest to Mary Shaw." Words could not be clearer or stronger to shew, that the grantor meant to liberate the slave as fully and completely as the law would authorise; and that declares that slaves liberated in the manner it directs, shall enjoy “ as full freedom as if they had been particularly named and freed by the Act.”
Upon the execution and delivery of this deed then, Mary Shaw became, to all intents and purposes, free; unless this effect was prevented by the subsequent reservation of an absolute right to any children she might afterwards have. It is clear that it was not the intention of the grantor, by this subsequent clause1, to modify or narrow the freedom before given. The clause relates solely to the future increase. The deed bestows present freedom on Mary Shaw: The reservation had no present effect. It could only operate on a future contingency. Mary might nevér have children. In that case, the reservation would be a nullity. Would such a clause suspend, or in any way affect the free *599 dom given immediately, and without qualification by the former part of the deed ? Unquestionably not.
It was said, that this being a voluntary deed, should be construed like a will. ■ This, I think, would be a new rule of construction; We know not what was the consideration moving the grantor; but at law, the seal stands for a consideration, and all deeds are governed by the same rule of construction. If this were a will however, it would make no difference in the construction. We must give to the instrument its true meaning; and that is exceedingly plain. The grantor meant to emancipate Mary Shaw fully and immediately, and to hold in slavery any children she might afterwards have; and the only question is a question not of intention, but of power. Could the grantor, •after giving the mother perfect freedom, reserve to himself any interest in her future children ? When a female slave is given to one, and her future increase to another, such disposition is valid, because it is permitted to a man to exercise control over the increase and issues of his property, within certain limits. But when she is made free, her condition is wholly changed. She becomes a^new creature; receives a new existence; all property in her is utterly extinguished; her rights and condition are just the same as if she had been born free. After thus divesting himself of all property in the mother, the grantor could not reserve to himself a right to hold her future progeny in slavery. A free mother cannot have children who are slaves. Such a birth would be monstrous both in the eye of reason and of law. The reservation, therefore, was repugnant to the grant; and I need not cite authorities to shew, that in such case, the grant is good, and the reservation void.
But, independent of this rule of construction, such reservation was void by the positive law of the land, then in force; which declares that “ all children shall be bond or free, according to the condition of their mothers.” This law and its effects are noticed in various cases in this Court; by Judge Pendleton, in Shelton v. Bar *600 bour, 2 Wash. 64; by Judge Fleming, in Pegram v. Isabel, 2 Hen. & Munf. 193; and by the Court, in Maria v. Surbaugh, 2 Rand. 228. In this last ease, a female slave given to Jl, till she should be 31 years old, and then to be free, had children before she arrived at 31; and- these children were held to be slaves. Why ? Because, at their birth the mother was a slave. So here, Mary ShatO, by the deed, was emancipated, made free. The plaintiff was born afterwards. She is free, because that was the condition of her mother at her birth.
I think the judgment must be affirmed.
The other Judges concurred, and the judgment was affirmed.*