December 18.
JUDGE GREEN.
In April, 1806, Abel West emancipated many of his slaves, by a Deed, which in the same month was duly recorded, upon his acknowledgment. Amongst these was Jenny, the mother of the Appellant, who was born in 1813. West died in 1816. The operative words of the Deed were: “I, Abel West have, and by these presents do manumit, and set free the following negroes at my death; they shall serve me as long as I live, and at my death shall go free from all persons; and I do hereby for mj'self, and my heirs, executors, and administrators relinquish all my right, and title of, in, and unto the aforesaid negroes Josiah,” &c.
In the month of January preceding the date of the Deed, many of the negroes were settled by West, upon two hundred *acres of land, which he afterwards *859 devised to the negroes, which had belonged to him. These were from the time of that settlement, practically tree, rendering no service to West, and appropriating all their earnings to their own use, some of the women hiring out their children, and receiving their hires. Some of the slaves named in the Deed, continued to serve West until his death.
If the civil condition of Jenny was changed from that of slavery to freedom, immediately on the execution of the Deed, Isaac was born free, although she might have been bound to service during her former master’s life. On the contrary, if she continued a slave till West’s death, he was born a slave, and so continues, notwithstanding the subsequent change of his mother’s condition.
If the first clause of the Deed conferring freedom on these slaves, was the only one having that effect, it is clear that they would have continued slaves to all intents and purposes, until West’s death. On the other hand, if the last clause was the only one in the Deed whch had that effect, they would have been immediately free. And if there were no other clause affecting the construction of the Deed, I should think the generality of the last would be modified by the first so as to give effect to the manifest purpose of holding the slaves during West’s life-time, and in the absence of any evidence of his intention as to the mode of holding them, it must have been taken that he intended to continue to hold them as he then did, as absolute slaves, to be disposed of during his life, as he pleased, by transferring them for that time to any other purpose, or otherwise. The second clause, which declares that they should serve him during his life, seems to indicate that he did not intend to reserve his original and general power over them, as a master entitled to dispose of them during his life, at his pleasure, by selling them to others, but only to impose on them the obligation to serve him personally as he should require.
*The three clauses, then, taken together, may be considered, as modifying each other, so that all may have some effect, and be construed to give immediate freedom, to all intents and purposes except to hold them bound to serve West himself, personally, during his life. They may be read together thus: “I Abel West have, and by these presents do manumit, and set free, and do hereby for myself, my heirs, executors, and administrators, relinquish all my right and title of, in and unto the following negroes Josiah, &c. But they shall serve me as long as I shall live, and at my death shall go free from all persons.” The effect of this would be that he renounced all his right and title as master, from that moment, reserving a right to claim their personal services to himself only, as a condition of the emancipation. If this condition was against Law, as inconsistent with the right granted, it would not frustrate the grant. Thus, a condition that the grantee should not enjoy the estate granted, but in a particular way, or should not alienate it, would be void, and not affect the validity of the grant; and so in case of a grant of present freedom to a female slave, with a condition that her future issue should be slaves, the condition is against Law', and void, but does not invalidate the grant, as was held in Fulton v. Shaw, 4 Rand. 597.
If this construction is doubtful, some weight is due to the maxim, that every Deed is to be taken most strongly against the grantor, and to the spirit of the Laws of all civilized nations which favours liberty. “In obscura volúntate manumitten-tis, favendum est libertati.” Dig. Lib. £0, tit. 17, § 179, Ulpian. And for the Common Law, see Coke Lift. 124, b.
The Judgment of the Superior Court ought to be reversed, and Judgment entered for the Plaintiff.
JUDGES CABELL, COALTEE, and CAEE, concurred.*